IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00552-MSK-KLM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIAM ELSBERG,
SANDRA ELSBERG,
TIM ORTEGA, Trustee, San Juan Ventures,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **United States' Motion for Default Judgment** [Docket No. 46; Filed November 12, 2008] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo.L.Civ.R. 72.1.C., the matter has been referred to this Court for recommendation. The Court has reviewed the Motion, the entire case file and applicable case law and is sufficiently advised in the premises. Accordingly, for the reasons set forth below, the Court **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART**.

**I.    Background**

The United States of America (the "Plaintiff" or the "Government") commenced this action on March 18, 2008, to reduce to judgment certain tax liabilities assessed against Defendants and to foreclose federal tax liens against Defendants and against real property

1

in which Defendants have an interest.  *Complaint* [#1] at 1.  The real property that is the subject of this action is located at 24 Mineral Farms Lane, Ouray, Colorado 81427 (the "Ouray Property").  *Id.* at 2.  The Government alleges that Defendants William and Sandra Elsberg (the "Elsberg Defendants") own the Ouray Property, while Defendant Tim Ortega, Trustee for San Juan Ventures, is a "mere nominee for William and Sandra Elsberg . . . ." *Id.*  The Government moved for default judgment on November 11, 2008, supporting the Motion with the Declaration of Lauren Castaldi, an attorney with the United States Department of Justice (the "Castaldi Decl."), the Declaration of Victoria Caldwell, the Secretary of Mineral Farms Water Users, Inc. (the "Caldwell Decl."), and the Declaration of Lee Routledge, a Technical Services Advisor and Revenue Officer in the Internal Revenue Service (the "Routledge Decl.").

As detailed in the Motion, on September 6, 1999, a delegate of the Secretary of the Treasury made assessments against Defendant William Elsberg for unpaid federal income taxes, penalties, interest and other statutory additions for the tax period 1994.  *Motion* [#47] at 4.  Plaintiff asserts that despite timely notice and demand for payment pursuant to 26 U.S.C. § 6303, Defendant William Elsberg has neglected or refused to pay the assessment against him.  *Id.*  As of January 31, 2009, there remains due and owing on this assessment the amount of $33,601.29, plus interest and penalties accrued thereafter as provided by law.  *Id.*; *Routledge Decl.* [#50] at Ex. 1, p. 2.

Further, on various dates between May 1, 2000 and November 27, 2006, a delegate of the Secretary of the Treasury made assessments against both Elsberg Defendants for unpaid federal income taxes, penalties, interest and other statutory additions for the tax periods 1995 through 1997.  *Motion* [#47] at 5.  Plaintiff asserts that despite timely notice

and demand for payment pursuant to 26 U.S.C. § 6303, the Elsberg Defendants have neglected or refused to pay the assessments against them. *Id.* As of January 31, 2009, there remains due and owing on those assessments the amount of $791,232.43, plus interest and penalties accrued thereafter as provided by law. *Id.*; *Routledge Decl.* [#50] at Ex. 2-4.

As discussed in the analysis below, because the Elsberg Defendants failed to pay their tax liabilities after notice and demand were made, on the dates of the respective assessments, pursuant to 26 U.S.C. § 6321, federal tax liens arose and attached to all property and rights to the Elsbergs' property, including the Ouray Property, which is the subject of the foreclosure counts of this lawsuit. Notices of these federal tax liens were filed with the Clerk and Recorder of Ouray County, Colorado on various dates pursuant to 26 U.S.C. § 6323. *See Castaldi Decl.* [#48] at Ex. 5; Ex. 6; Ex. 7; Ex. 8; Ex. 9.

The Elsberg Defendants acquired title to the Ouray Property via Warranty Deed from Michael and Agnes Osterhill dated June 15, 1985, and recorded in the Ouray County Recorder's Office on June 17, 1985. *Castaldi Decl.* [#48] at Ex. 1. On April 17, 1996, a quit claim deed was signed, publicly notarized, and filed with the Ouray County Recorder purporting to transfer the Ouray Property to Tim Ortega, Trustee for San Juan Ventures, for the stated consideration of twenty-one United States of America silver dollars. *Castaldi Decl.* [#48] at Ex. 2. Also on April 17, 1996, a "Bill of Conveyance" was recorded in the Office of the Clerk and Recorder for Ouray County, Colorado, purporting to convey the Ouray Property to Tim Ortega, Trustee for San Juan Ventures. *Castaldi Decl.* [#48] at Ex. 3. Finally, on that same date, Defendants filed an "Assignees' Declaration of Land Grant and Notice of Preemption Right" in the Office of the Clerk and Recorder for Ouray County,

Colorado purporting to convey the Ouray Property to Tim Ortega, Trustee for San Juan Ventures. *Castaldi Decl.* [#48] at Ex. 4.

On May 23, 2006, a delegate of the Secretary of the Treasury recorded, in Ouray County, a Notice of Federal Tax Lien with respect to the assessments against William and Sandra Elsberg for income taxes for the 1995, 1996, and 1997 tax periods. *Castaldi Decl.* [#48] at Ex. 5. On December 13, 2006, a delegate of the Secretary of the Treasury recorded, in Ouray County, a Notice of Federal Tax Lien against San Juan Ventures, Tim Ortega Trustee as the nominee of William and Sandra Elsberg, with respect to the income tax assessments against the Elsberg Defendants for the 1995, 1996, and 1997 tax periods. *Castaldi Decl.* [#48] at Ex. 6. Also on December 13, 2006, a delegate of the Secretary of the Treasury recorded, in Ouray County, a Notice of Federal Tax Lien against San Juan Ventures, Tim Ortega Trustee as the nominee of William Elsberg, with respect to the income tax assessments against William Elsberg for the 1994 tax period. *Castaldi Decl.* [#48] at Ex. 7. On September 5, 2007, a delegate of the Secretary of the Treasury recorded, in Ouray County, an amended Notice of Federal Tax Lien against San Juan Ventures, Tim Ortega Trustee as the nominee of William and Sandra Elsberg, with respect to the income tax assessments against the Elsberg Defendants for the 1995, 1996, and 1997 tax periods. *Castaldi Decl.* [#48] at Ex. 8. The amended notice was filed to correct the name of Tim Ortega, improperly spelled on the original Notice, and to correct the assessment date for the 1997 tax period. *See id.* On November 5, 2007, a delegate of the Secretary of the Treasury recorded, in Ouray County, an amended Notice of Federal Tax Lien against San Juan Ventures, Tim Ortega Trustee as the nominee of William and Sandra Elsberg, with respect to the income tax assessments against the Elsberg

Defendants for the 1995, 1996, and 1997 tax periods . *Castaldi Decl.* [#48] at Ex. 9. The amended notice was filed to correct the assessment dates for the 1996 and 1997 tax periods. *See id.*

On November 12, 2008, Plaintiff filed a Complaint with this Court to reduce the federal tax assessments to judgment and to foreclose federal tax liens encumbering the Ouray Property. *See Complaint* [#1].

## II. Analysis

The Government argues that it is entitled to default judgment against the Elsberg Defendants and Tim Ortega as Trustee for San Juan Ventures, because Defendants have failed to respond to the Complaint after Defendants were properly served, because the Court has entered default against Defendants, and because the documents attached to the declarations demonstrate that the tax assessments are valid and that tax liens have attached to the property at issue. *Motion* [#47] at 1-3. Plaintiff specifically requests that the Court determine that the Ouray Property at issue belongs to the Elsberg Defendants individually and that San Juan Ventures does not have an interest in the property. *Id.* at 2. Plaintiff also requests a judgment against William Elsberg in the amount of $33,601.29 and against William and Sandra Elsberg in the amount of $791,232.43. *Id.*

### A. Default Judgment

Default may enter against a party who fails to appear or otherwise defend the case brought against it pursuant to Fed. R. Civ. P. 55. Default was entered against all Defendants on November 7, 2008 [Docket No. 45]. However, even after entry of default, it is for the Court to decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *See Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-

MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (unpublished decision) (citations omitted). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Id.* at *2 (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)). Where the complaint states an adequate legal basis for relief against a party in default, default judgment is appropriate. *Id.* (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986)).

Upon review of a motion for default judgment, and after default has entered, Plaintiff enjoys the benefit of deferential pleading interpretation. As such, the Court deems the well-pleaded facts of the complaint to be true. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (10th Cir. 2002); *Deery Am. Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished decision) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). The Court also accepts as undisputed any facts set forth by Plaintiff in affidavits and exhibits. *Id.* When assessing damages, however, the Court must review the record and, if necessary, make a further factual inquiry to establish the amount the plaintiff is entitled to recover. *See Pope v. United States*, 323 U.S. 1 (1944).

A defendant in a civil action has twenty days after being served with the summons and complaint, or ten days after notice of the court's denial of a motion, to serve an answer. *See* Fed. R. Civ. P. 12(a)(1)(A) & (a)(4)(A). The Court authorized Plaintiff to serve process on all Defendants by publication [Docket No. 11]. That service was completed by September 29, 2008 [Docket No. 37]. Defendants William Elsberg, Sandra Elsberg and Tim Ortega have failed to plead or otherwise defend against this action. "[W]hen a party

6

against whom a judgment for affirmative relief is sought has failed to plead or otherwise defendant," the party may be defaulted. *See* Fed. R. Civ. P. 55. As a result, as noted above, upon Plaintiff's Motion, on November 7, 2008, pursuant to Rule 55(a), the Clerk of the Court entered default against Defendants William Elsberg, Sandra Elsberg and Tim Ortega [Docket No. 45].

The Court has carefully examined the pleadings filed by Defendant Tim Ortega after default was entered by the Clerk in this case. *See Special Appearance by Amicus Curiae, Invoking Rights Sua Sponte* [Docket No. 53; Filed January 20, 2009] and *Special Appearance by Amicus Curiae, Invoking Rights Sua Sponte* [Docket No. 54; Filed January 21, 2009]. These documents do not comply with the Rules of Civil Procedure or the Local Rules of this Court and do not constitute responses to the allegations and claims stated in the Complaint. Further, the Government has submitted a declaration stating that Defendants are not incompetent or infants, and to the knowledge of the Government, are not in the military service of the United States within the purview of the Soldiers' and Sailors' Civil Relief Act. *See Castaldi Decl.* [#48] at 1-2. Consequently, the Court finds that judgment by default is appropriate and will recommend that Plaintiff's motion requesting default judgment against Defendants William Elsberg, Sandra Elsberg and Tim Ortega, Trustee for San Juan Ventures, be granted in part.

**B. The Tax Assessments Should be Reduced to Judgment**

Plaintiff has presented evidence to support its request that the Court reduce the tax assessments against Defendants to judgment. Specifically, Plaintiff has filed Certificates of Assessments and Payments (Forms 4340) that reflect the tax assessments made against the Elsberg Defendants. *See Routledge Decl.* [#50] at Ex. 5; Ex. 6; Ex. 7; Ex. 8.

7

Certificates of Assessments and Payments (Forms 4340) are "routinely used to prove that tax assessment[s] ha[ve] in fact been made," *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1992) (internal quotations and citation omitted), and are presumptive proof that an assessment was made in accordance with 26 U.S.C. § 6203 and relevant Treasury Regulations. *See id.*; *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992).

The Certificates of Assessments and Payments (Forms 4340) submitted by Plaintiff in this case establish the following with respect to the Elsbergs' tax liabilities: (1) that they were properly assessed, *see* 26 U.S.C. §§ 6201-6203; (2) that notices and demand for payment of the liabilities were properly sent, *see* 26 U.S.C. §§ 6203(a) and 6321; and (3) that defendants are presumptively liable for the unpaid taxes, penalties, and interest shown on the respective certificates. *See Huff v. United States*, 10 F.3d 1440, 1445-47 (9th Cir. 1993), *cert. denied*, 512 U.S. 1219 (1994); *Long*, 972 F.2d at 1181; *United States v. Lorson Elec. Co., Inc.*, 480 F.2d 554, 555 (2nd Cir. 1973); *United States v. Strebler*, 313 F.2d 402, 404 (8th Cir. 1963); *United States v. Stonier*, 1994 WL 395644, at *3 (D. Colo. Feb. 28, 1994) (unpublished decision). As there is nothing in the record to rebut these presumptions, Plaintiff is entitled to judgment in its favor reducing the tax assessments to judgment.

Therefore, as set forth above, the Certificates of Assessments and Payments (Forms 4340) submitted by the Government establish that judgment should be entered against William Elsberg in the amount of $33,601.29 and against William and Sandra Elsberg in the amount of $791,232.43. Therefore, the Court will recommend that judgment be entered in favor of Plaintiff reducing these tax assessments to judgment for the amounts specified above.

**C. San Juan Ventures is the Nominee and Fraudulent Transferee of the Elsbergs and Has No Interest in the Ouray Property**

On the dates identified in the Certificates of Assessments and Payments (Forms 4340) submitted by Plaintiff, assessments for unpaid federal individual income tax, statutory penalties, and interest were made against Defendant William Elsberg. *Routledge Decl.* [#50] at Ex. 5. Likewise, on the dates identified in the attached Certificates of Assessments and Payments (Forms 4340) submitted by Plaintiff, assessments for unpaid federal individual income tax, statutory penalties, and interest were made against William and Sandra Elsberg. *Routledge Decl.* [#50] at Ex. 6; Ex. 7; Ex. 8. Pursuant to 26 U.S.C. §§ 6321 and 6322, on the dates of assessment, liens arose in favor of the United States and attached to all of the Elsbergs Defendants' property and rights to property, and continue until the taxpayer's liability is satisfied or becomes unenforceable. *See* 26 U.S.C. § 6322; *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719 (1985). Notices of Federal Tax Liens regarding these assessments were then recorded with the Ouray County Recorder. *Castaldi Decl.* [#48] at Ex. 5; Ex. 6; Ex. 7; Ex. 8; Ex. 9.

The lien created by 26 U.S.C. § 6321 attaches to a taxpayer's property held in the name of a nominee, and therefore, the United States may foreclose on property held by a nominee of a taxpayer in order to collect the taxpayer's debt. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977); *Shades Ridge Holding Company v. United States*, 888 F.2d 725, 728 (11th Cir. 1989). Federal case law recognizes that where a taxpayer attempts to defeat the collection of his or her federal tax debts by placing property in the names of third parties who act as nominees, straw parties or alter egos of the taxpayer, the conveyance to the third parties will be disregarded as fraudulent

9

conveyances, and the outstanding tax liens will be foreclosed on the property. *United States v. Gosnell*, 961 F.2d 1518, 1520 (10th Cir. 1992) ("Property held in the name of an entity which is the alter ego of a taxpayer may be levied on to satisfy the tax liabilities of the taxpayer."); *United States v. Stinson*, 386 F.Supp.2d 1207, 1217-18 (W.D. Okla. 2005) (collecting cases). Plaintiff argues that the information it has submitted to the Court demonstrates that Tim Ortega, Trustee for San Juan Ventures, is a nominee of the Elsbergs and the transfer of the Ouray Property to Tim Ortega, Trustee for San Juan Ventures was a fraudulent transfer within the meaning of Colorado Uniform Fraudulent Transfer Act ("CUFTA"), Colo. Rev. Stat. § 38-8-105(1). *Motion* [#47] at 9. Therefore, the Court must determine whether Tim Ortega, Trustee for San Juan Ventures is a nominee of the Elsbergs, because the tax liabilities of the Elsberg Defendants arose after the purported transfer of the Ouray Property to San Juan Ventures.

The existence of a nominee relationship, whether analyzed pursuant to state or federal law, is determined by which party maintains substantial control. *See United States v. Schaeffer*, 245 B.R. 407, 415 (D. Colo. 1999) (citing *Valley Fin., Inc. v. United States*, 629 F.2d 162, 172 (D.C.Cir. 1980)). Generally, federal courts look to state law to determine whether an entity is a nominee of a taxpayer. *Aquilino v. United States*, 363 U.S. 509, 512-13 (1960). Pursuant to Colorado law, the following considerations are relevant in determining whether an individual or a corporation holds property as a nominee of another:

> (1) the lack of consideration paid by the nominee; (2) the control exercised over the property by the transferor while the title is in the nominee's name; (3) the close relationship between the transferor and the nominee; (4) the use by the transferor of the transferred property or funds; and (5) lack of interference in transferor's use of property by nominee.

*See Schaeffer*, 245 B.R. at 415 (citing *Shades Ridge Holding Co., Inc.*, 888 F.2d at 729).

Each of these factors is present in this case. First, the quitclaim deed reveals that only twenty-one United States silver dollars were paid in consideration for the purported purchase of the Ouray Property by Tim Ortega, Trustee for San Juan Ventures. *See Castaldi Decl.* [#48] at Ex. 3. Second, Plaintiff alleges that the Elsberg Defendants continued to exercise control over the Ouray Property after it was in the name of San Juan Ventures. *Motion* [#47] at 11; *Complaint* [#1] at ¶¶ 18, 32. Plaintiff has submitted evidence that the Elsberg Defendants paid the water bills for the Ouray Property up to and including the year 2005, nine years after the purported transfer to San Juan Ventures. *Caldwell Decl.* [#49] at 2; Ex. 1; Ex. 2; Ex. 3. Defendant William Elsberg further represented himself as the point of contact for all inquiries related to the payment of the water bills for the Ouray Property. *Id.* at 2. In an email sent to Victoria Caldwell, the Secretary of Mineral Farms Water Users, Inc., William Elsberg stated that he would "take care of [the water bill for the Ouray Property for 2005] with you personally in cash when I come to Mineral Farms in May or June." *Id.* at Ex. 2. Most tellingly, Defendant William Elsberg did not disclaim ownership of or responsibility for the utility bills for the Ouray Property, nor did he direct Ms. Caldwell to contact San Juan Ventures or Tim Ortega for payment of the bills. *Id.* Third, Plaintiff alleges that a close relationship existed between the Elsberg Defendants and San Juan Ventures. *Motion* [#47] at 11; *Complaint* [#1] at ¶ 18. Plaintiff has submitted evidence that the Elsberg Defendants' daughter, Eleah Elsberg, purchased a cashier's check in the name of San Juan Ventures to order to pay the property taxes overdue on the Ouray Property. *Complaint* [#1] at ¶ 18; *Castaldi Decl.* [#48] at Ex. 10. Plaintiff has also submitted evidence that Defendant William Elsberg deposited funds into Eleah Elsberg's Wells Fargo bank account. *Castaldi Decl.* [#48] at Ex. 11. Finally,

Plaintiff has submitted evidence that in response to water bill payments, Defendant William Elsberg submitted payments in both his own name, and in the name of San Juan Ventures. *Caldwell Decl.* [#49] at Ex. 3. Fourth, as evidence of the use by the transferor of the transferred property or funds, Plaintiff has presented evidence that Defendant Elsberg "represented himself as the point of contact for all billing inquiries and managed problems involving the Ouray Propery personally." *Motion* [#47] at 12; *Caldwell Decl. Decl.* [#48] at Ex. 2. Fifth, to show lack of interference in the Ouray Property by the nominee, San Juan Ventures, Plaintiff alleges that San Juan Ventures never exerted control over the Ouray Property. *Motion* [#47] at 12; *Complaint* [#1] at ¶ 32. Further, Plaintiff has presented evidence that in relation to payment of the water bills, Mineral Farms Water Users did not receive payment from, nor have any contact with Tim Ortega, and that "[t]he persons of contact for all issues arising from the water use at the [Ouray Property have] at all times been either William Elsberg or Sandra Elsberg." *Caldwell Decl.* [#49] at 2-3. Based upon the above factors and deeming all of Plaintiff's allegations as true, the Court finds that Tim Ortega, Trustee for San Juan Ventures holds the Elsberg Defendants' interest in the Ouray Property as their nominee. *See Shades Ridge Holding Co., Inc.,* 888 F.2d at 729; *Schaeffer*, 245 B.R. at 415. Accordingly, the Court concludes that San Juan Ventures has no interest in the Ouray Property. *See id.*

Likewise, similar facts and analysis establish that the conveyance to San Juan Ventures was the result of a fraudulent transfer by the Elsberg Defendants in violation of CUFTA, Colo. Rev. Stat. § 38-8-105(1). Pursuant to the relevant portion of CUFTA,

> (1) a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred

the obligation: (a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (I) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (II) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they become due.

Colo. Rev. Stat. § 38-8-105(1). Further, CUFTA provides that if a creditor prevails on a cause of action pursuant to that statute, he may, *inter alia*, seek "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Colo. Rev. Stat. § 38-8-108. Plaintiff has alleged that the purported transfer of the Ouray Property to San Juan Ventures was intended by the Elsberg Defendants to hinder, delay or defraud the United States of present and future lawful income taxes. *See Complaint* [#1] at ¶ 34. Second, Plaintiff has alleged that the purported transfer was made for twenty-one United States silver dollars, or without the exchange of reasonably equivalent value. *Id.* at ¶ 35. Finally, Plaintiff has alleged that the purported transfer was made during a period when the Elsberg Defendants intended to incur, or reasonably should have believed that they would incur debts beyond their ability to pay as they came due. *Id.* at ¶ 35. As further proof of this last element, Plaintiff asserts that the Certificate of Assessments, Payments and Other Specified Matters (Form 4340) for William Elsberg for the tax year 1994 shows that a substitute for return was made for the Elsberg Defendants by the IRS on March 8, 1996, which opened the examination against Defendant William Elsberg for the tax year 1994. *Motion* [#47] at 14; *Routledge Decl.* [#50] at Ex. 5. As indicated above, the Certificates of Assessments and Payments (Forms 4340) submitted by the Government presumptively establish that notice and demand for payment was property sent to the Elsberg

Defendants. Plaintiff alleges that just over a month later, on April 17, 1996, the Elsbergs made the purported transfer to San Juan Ventures and recorded the said transfer on May 7, 1996. *Motion* [#47] at 14; *Castaldi Decl.* [#48] at Ex. 2-3. Deeming all of Plaintiff's allegations and exhibits as true, the Court finds that the conveyance to San Juan Ventures was the result of a fraudulent transfer by the Elsberg Defendants in violation of CUFTA, Colo. Rev. Stat. § 38-8-105(1), and therefore, that the Ouray Property is subject to collection of tax by the United States for the Elsberg Defendants' outstanding tax liabilities. *See G.M. Leasing Corp.*, 429 U.S. at 351.

### D. Foreclosure

The Government's Third Claim for Relief requests, in part, that the federal tax liens encumbering the Ouray Property be foreclosed as against the interests of the Elsberg Defendants, and that the property be sold to satisfy the outstanding and delinquent federal tax liabilities of the Elsberg Defendants, pursuant to 26 U.S.C. § 7403. *Complaint* [#1] at 9-10. The Government's Motion also appears to request that the federal tax liens against William Elsberg for the 1994 tax period, and against William and Sandra Elsberg for the 1995, 1996 and 1997 tax periods be foreclosed in this proceeding. *Motion* [#47] at 19-20.

Once a lien is established pursuant to 26 U.S.C. § 6321, 26 U.S.C. § 7403 authorizes a sale of the property to satisfy the delinquent taxpayer's debt. 26 U.S.C. § 7403 provides, in relevant part,

> in all cases where a claim or interest of the United States therein is established, [the court] may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

14

The Tenth Circuit has found that § 7403 confers "flexibility and broad discretion upon the courts in fashioning a remedy thereunder," and that § 6321 does not automatically require that a foreclosure sale be held pursuant to § 7403. *United States v. Hershberger*, 475 F.2d 677, 679 (10th Cir. 1973) (finding that "§ 6321 imposes a lien upon delinquent taxpayer's real and personal property, but it does not necessarily follow that § 7403(c) requires the courts to satisfy this lien via a tax foreclosure sale. . . .Emphasized another way, when the matter is before the court, Congress intends the court to exercise equitable powers in rendering its decision."); *see also United States v. Eaves*, 499 F.2d 869, 871 (10th Cir. 1974) (finding that "Section 7403 has traditionally been interpreted as conferring flexibility and broad discretion upon the courts in fashioning a remedy thereunder. As the use of the term 'may' in subsection (c) implies, this discretion and flexibility extends to the decision whether or not to order foreclosure once the validity of the lien has been established."). However, Plaintiff does not provide any additional briefing, or set forth the law or relevant considerations to guide the Court in its exercise of discretion pursuant to 26 U.S.C. § 7403. Accordingly, the Court declines to make a recommendation on the Government's request to foreclose on the Ouray Property, as it appears that additional briefing and information is required prior to such a decision being made and the sale of the Ouray Property ordered. Therefore, to the extent the Motion requests such an order, the Court will respectfully **RECOMMEND** that this request be **DENIED without prejudice**.

III.    **Conclusion**

Accordingly, I respectfully **RECOMMEND** that the **United States' Motion for Default Judgment** [Docket No. 46; Filed November 12, 2008] be **GRANTED IN PART**

**AND DENIED IN PART, without prejudice**.  Specifically, the Court **RECOMMENDS** the following:

(1) That default judgment be entered against Defendant William Elsberg as to all claims for relief in the Complaint, and in the amount of $33,601.29, plus statutory interest and other additions as provided by law from January 31, 2009;

(2) That default judgment be entered against Defendants William Elsberg and Sandra Elsberg as to all claims for relief in the Complaint, and in the amount of $791,232.43, plus statutory interest and other additions as provided by law from January 31, 2009;

(3) That default judgment be entered against Defendant Tim Ortega, as Trustee of San Juan Ventures, who the Court has determined has no valid interest in the Ouray Property.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: March 18, 2009